## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

REBECCA FACTOR, individually and on
behalf of all others similarly situated,

       Plaintiffs,

v.

HOOTERS OF AMERICA, LLC,
a Georgia limited liability corporation,

       Defendant.

_____/

Case No.:

Complaint-Class Action

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
## FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)

Plaintiff, Rebecca Factor ("**Plaintiff**" or "**Factor**"), individually and on behalf of all others similarly situated, sues Defendant, Hooters of America, LLC ("**Defendant**" or "**Hooters**"), for violations of the Fair and Accurate Credit Transactions Act ("**FACTA**") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended ("**FCRA**"), and alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

### NATURE OF ACTION

1.    This action arises from Defendant's violation of the FACTA amendment to the FCRA, which requires Defendant to truncate certain credit card information on receipts. Despite the clear language of the statute, Defendant

willfully or knowingly chose not to comply. As such, Plaintiff and other similarly situated consumers who conducted business with Defendant during the time frame relevant to this Complaint, each of whom paid for goods using a credit or debit card and were provided with a violative receipt, suffered violations of 15 U.S.C. § 1681c(g).

2.     As a result of Defendant's reckless conduct, Plaintiff and the Class are entitled to an award of statutory damages and other relief as further detailed herein.

## JURISDICTION AND VENUE

3.     This Court has federal question jurisdiction over this matter under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise from violations of a federal statute.

4.     Venue is proper in this district under 28 U.S.C. § 1391 because Defendant  maintains its corporate headquarters in this District, a substantial part of the events and omissions giving rise to the claims occurred in this District, and Defendant's contacts in this District are sufficient to subject it to personal jurisdiction.

## PARTIES

5.     Plaintiff, Rebecca Factor, is a natural person, who resides in Nashville,  Tennessee.

6.     Defendant, Hooters of America, LLC, is a Georgia limited liability

corporation.   Defendant is engaged in operating and franchising restaurants. Its menu includes various food and drink items, and the company also sells apparel and novelties, both in-store and online.  Defendant was formerly known as Hooters of America, Inc. and changed its name to Hooters of America, LLC in 2002. Defendant's principal address is 1815 The Exchange SE, Atlanta, Georgia 30339. As of July 2013, Hooters of America, LLC owned 160 restaurants, and operated or franchised more than 430 restaurants.

7.      Customers who make credit or debit card purchases from a restaurant owned by Defendant do so with the expectation that Defendant will secure their data, protect their personal information, and comply with federal privacy laws.

## FACTUAL ALLEGATIONS

### *Background of FACTA*

8.      Identity theft is a serious issue affecting both consumers and businesses. According to the Federal Trade Commission, there were 399,225 consumer complaints about identity theft in 2016.[1]

9.      Congress enacted FACTA to prevent actual harm. *See* Pub. L. No. 108-159 (December 4, 2003) ("An Act . . . to prevent identity theft . . . and for other purposes.")

10.      "[I]dentity theft is a serious problem, and FACTA is a serious

---

[1] Source: https://www.ftc.gov/news-events/press-releases/2017/03/ftc-releases-annual-summary-consumer-complaints (last accessed: February 9, 2018).

congressional effort to combat it…the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information." *Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014).

11.     Upon signing FACTA into law, President Bush also remarked that "Slips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." *Id*.

12.     One such FACTA provision was specifically designed to thwart the ability of identity thieves to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point-of-sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

13.     Codified at 15 U.S.C. § 1681c(g), this provision states the following:

Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

(the "**Receipt Provision**").

14.     Annual monetary losses from identity theft are in the billions of

dollars. According to a Presidential Report on identity theft produced in 2008:

> In addition to the losses that result when identity thieves fraudulently open accounts … individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.
>
> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.[2]

15.     By failing to comply with the Receipt Provision of FACTA, Defendant has caused consumers actual harm, not only because consumers were uniformly burdened with an elevated risk of identity theft, but because a portion of the sale from credit or debit card transactions is intended to protect consumer data, including the masking of credit card or debit card expiration dates, as required by both state and federal laws.

16.     Defendant also invaded Plaintiff's privacy by disclosing Plaintiff's

---

[2] The President's Identity Theft Task Force, Combating Identity Theft: A Strategic Plan, at p. 11 (April 2007), available at http://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic plan/strategicplan.pdf (last accessed: February 15, 2018).

private information to Defendant's employees who handled the receipts, as well as other persons who might find the receipts in the trash or elsewhere.

17.    According to a professional thief, "[t]here is big business for identity thieves in personal garbage … it has been a rare day that I come away empty handed. Most often I leave with enough confidential information to keep the average identity thief in business for months, or even years."[3]

18.    In addition to the actual harm that Defendant caused to Plaintiff and Class Members through its violation of the FACTA, Defendant has exposed Plaintiff and Class Members to the significant risk of future harm, including, but not limited to:

    a.  unauthorized charges on their debit and credit card accounts;

    b.  theft of their personal and financial information;

    c.  costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

    d.  loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they are permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit,

---

[3] Source: https://www.today.com/popculture/identity-theft-your-trash-their-treasure-wbna27011491 (last accessed: February 15, 2018).

including decreased credit scores and adverse credit notations;

e. costs and the loss of productivity associated with time spent attempting to ameliorate, mitigate and deal with the actual and future consequences of identity theft, including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from Defendant's misconduct;

f. the potential and imminent injury flowing from potential fraud and identify theft posed by their credit card and personal information being placed in the hands of criminals and misused; and

g. the continued risk to their financial and personal information, so long as Defendant fails to comply with the FACTA and take measures to adequately protect Plaintiff and Class Members.

### *FACTA Was Widely Publicized*

19. After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

20. The requirement was widely publicized among retailers and the FTC.

For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, Visa USA announced that it was implementing a new receipt truncation policy as an additional measure to combat identity theft and protect consumers. The policy, which went into effect on July 1, 2003 for all new terminals, limited cardholder information on receipts to the last four digits of their accounts. Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

21.     Card issuing organizations proceeded to require compliance with FACTA by contract in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to, and binding upon, all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[4]

22.     Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 ("**Clarification Act**") in order to make technical corrections to the definition of "willful noncompliance" with respect to violations

---

[4]  Source:  http://www.runtogold.com/images/rules_for_visa_merchants.pdf  (last  accessed: February 8, 2018).

involving the printing of an expiration date on certain credit and debit card receipts before the enactment date of the Clarification Act.[5]

23.    Importantly, the Clarification Act did not amend FACTA to allow publication of the expiration date of the card number. Instead, it simply provided amnesty for certain past violators up to June 3, 2008.

24.    In the interim, card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in  2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm  for more information on the FACTA.)

> To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

*See* Visa Alert, attached hereto as Exhibit A.

25.    According to data from the Federal Trade Commission's 2016 Consumer Sentinel Network report, identity theft from credit card fraud ranks

---

[5] Source: https://www.govtrack.us/congress/bills/110/hr4008/text (last accessed: June 4, 2016).

second among the most common types of identity theft reported.[6]

26.     So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, collaborated to set up a free website (http://www.annualcreditreport.com) in order to comply with FACTA requirements, and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

### *Defendant's Prior Knowledge of FACTA*

27.     Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing processes into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same, but it did not.

28.     Not only was Defendant informed it could not print more than the last five digits of credit or debit card numbers or card expiration dates, it was contractually prohibited from doing so. Defendant accepts credit cards and debit cards from all major issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

29.     As noted above, since 2003, the card processing companies have required that credit card or debit card numbers be truncated and that expiration

---

[6]  Source:  https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2016/csn_cy_2016_data_book.pdf  (last accessed: February 9, 2018).

dates not be shown on receipts. For example, American Express required:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

See American Express Merchant Requirements, attached hereto as Exhibit B.

30.    Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "* ," or "#," that are neither blank spaces nor numeric characters.

See MasterCard Requirements, attached hereto as Exhibit C.

31.    Despite the plethora of warnings, a federal lawsuit was filed against Defendant in *Hedlund v. Hooters of Houston, et al.*, Case No, 2:08-cv-00045-J (N.D. Tex. 2008) for failing to omit credit card expiration dates from receipts it created at the point-of-sale of its products. Even though the suit was eventually voluntarily dismissed by the parties, the court in that case did deny the defendants' motion to dismiss, finding, *inter alia*, that FACTA was not ambiguous. *Hedlund*, No. 2:08-cv-45-J, 2008 WL 2065852, at *4, (N.D. Tex. May 13, 2008).

32.   Now, despite being previously sued for violating FACTA, Defendant has once again knowingly and willfully violated the aforesaid federal law by printing receipts displaying the first six digits *and* the last four digits of its customers' credit or debit cards. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014) (explaining that issue of willfulness in FACTA class action lawsuit was "straightforward" wherein defendant violated a parallel state statute years earlier).

## PLAINTIFF'S FACTUAL ALLEGATIONS

33.   On or about February 6, 2018, Plaintiff purchased certain goods from one of Defendant's restaurants located at 184 2nd Avenue North in Nashville, Tennessee.

34.   Plaintiff paid for the subject goods using her personal credit card and was presented with an electronically printed receipt bearing ten digits of her card, including the first six digits and the last four digits.

35.   In addition, the receipt identified the subject method of payment as a credit card (as opposed to a debit card), the issuer/brand of Plaintiff's credit card, and the fact that Plaintiff's credit card is a chip card. The receipt that Defendant provided to Plaintiff makes clear that all consumers who make purchases at Defendant's restaurants using credit or debit cards are provided point-of-sale receipts that display more than the last five digits of their card numbers in violation

of FACTA.

## Defendant's Misdeeds

36.    At all times relevant herein, Defendant was acting by and though its agents, servants and/or employees, each of whom was acting within the course and scope of his/her agency or employment, and under the direct supervision and control of Defendant.

37.    At all times relevant to this action, the conduct of Defendant, as well as that of its agents, servants and/or employees, was in willful and reckless disregard for federal law and the rights of Plaintiff and Class Members.

38.    It is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point-of-sale – *i.e.*, immediately upon receipt of a credit card payment.

39.    Because Defendant prints ten digits of debit and credit cards on its receipt, any person, including an identity thief, can readily discern whether the card is still active and valid, thereby allowing identity thieves to narrow their focus to the more "viable" targets.

40.    Notwithstanding the fact that it has extensive knowledge of the requirements of FACTA and the dangers imposed upon consumers through its failure to comply, Defendant continues to issue point-of-sale receipts, which contain ten digits of consumers' credit cards and/or debit cards, in direct violation

of the Receipt Provision of the FACTA.

41.    Notwithstanding the Receipt Provision, Defendant continues to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts which do not comply with the FCRA.

42.    Notwithstanding the fact that Defendant had years to comply with FACTA's requirements and the fact that Defendant was previously sued for violating the exact same federal statute, Defendant continues to act in conscious disregard for the rights of others. *See Redman*, 768 F.3d at 638 (explaining that issue of willfulness in FACTA class action lawsuit was "straightforward" wherein defendant violated a parallel state statute years earlier).

43.    To paraphrase the words of Judge Posner in *Redman*, Defendant has been engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known…" *Redman*, 768 F.3d at 627.

44.    A company subject to the FACTA can be liable for willful violations of the FACTA within the meaning of §1681n if it shows a "reckless disregard" for the law. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

## CLASS ACTION ALLEGATIONS

45.    This action is brought as a class action under Federal Rule of Civil Procedure 23(a),(b)(1),(2) and (c)(4). Plaintiff proposes the following class definition, subject to modification by the Court as required:

> (i) All persons in the United States (ii) who, when making payment at a Hooters restaurant (iii) made such payment using a credit or debit card (iv) and were provided with a point-of-sale receipt (v) which displayed more than the last five digits of the credit or debit card number (vi) within the two (2) years prior to the filing of the complaint.

46.     Plaintiff falls within the class definition and is a Member of the proposed Class. Excluded from the Class is Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

47.     Plaintiff respectfully reserves the right to amend the putative class definition prior to the conclusion of this matter, subject to Court approval. Class definitions may be amended or altered at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C); *see also*, *e.g.*, *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 695 (S.D. Fla. 2013) (modifying class definition per plaintiff's suggestion).

## **Certification Under Either Rule 23(b)(2) or (b)(3) Is Proper**

48.     The Class Members are capable of being described without managerial or administrative problems. The Class Members are readily ascertainable from the information and records in the possession, custody or

control of Defendant.

49.     Defendant owns and operates approximately 160 retail stores throughout the United States, accepts credit cards and debit cards at each location and, upon information and belief, each location prints receipts reflective of credit card or debit card transactions in violation of FACTA. Therefore, it is reasonable to conclude that the Class is sufficiently numerous such that individual joinder of all Members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified through Defendant's records or Defendant's agents' records.

50.     There are common questions of law and fact that predominate over any questions affecting only the individual Class Members. The wrongs alleged against Defendant are statutory in nature and common to each and every putative Class Member.

51.     While all Class Members have experienced actual harm, as previously explained herein, this suit seeks only statutory damages and injunctive relief on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the class definition to seek recovery on behalf of additional persons, as warranted, as facts are learned through further investigation and discovery.

52.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions that may affect individual class members, including the following:

a.   Whether, within the two years prior to the filing of this Complaint, Defendant and/or its agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt containing more than the last five digits of the card number;

b.   Whether Defendant's conduct was willful and reckless;

c.   Whether Defendant is liable for damages, and the extent of statutory damages for each such violation; and

d.   Whether Defendant should be enjoined from engaging in such conduct in the future.

53.     As a person that patronized one of Defendant's restaurants and received a printed receipt containing ten digits of her credit card, Plaintiff is asserting claims that are typical of the proposed Class. Plaintiff will fairly and adequately represent and protect the interests of the Class, in that Plaintiff has no interests antagonistic to any Class Member.

54.     The principal question is whether Defendant violated section 1681c(g) of the FACTA by providing Class Members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendant willfully or knowingly provided such electronically printed receipts, despite firsthand knowledge of the unlawful nature of such policy.

55.    Plaintiff and the Class Members have all suffered harm as a result of Defendant's unlawful and wrongful conduct. Absent a class action, the Class, along with countless future patrons of Defendant's many retail establishments, will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant will (as it has already shown) continue such illegal conduct. Because of the size of the individual Class Members' claims, few Class Members, if any, could afford to seek legal redress for the wrongs complained of herein.

56.    Defendant's defenses are and will be typical of and the same or identical for each Class Member, and will be based on the same legal and factual theories. There are no unique defenses to any Class Members' claims.

57.    A class action is a superior method for the fair and efficient adjudication of this controversy. Classwide damages are essential to induce Defendant to comply with federal law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

58.    Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory

relief with respect to the Class as a whole.

## COUNT I
## VIOLATIONS OF 15 U.S.C. § 1681(c)(g)

59.    15 U.S.C. §1681c(g) states as follows:

*Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last  5 digits of the card number or the expiration date upon any receipt provided to  the cardholder at the point of sale or transaction.*

60.    This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point-of-sale transactions. 15 U.S.C. §1681c(g)(3).

61.    Defendant employs the use of said Devices for point-of-sale transactions at its various restaurant and retail locations.

62.    On or before the date on which this Complaint was filed, Plaintiffs and Class Members were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

63.    At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

64.    Notwithstanding the three year-period to prepare for FACTA and its accompanying provisions including, but not limited to, the Receipt Provision, and having knowledge of the Receipt Provision and FACTA as a whole, Defendant knowingly, willfully, intentionally, and/or recklessly violated and continues to

violate the FCRA and the Receipt Provision.

65.     By printing more than the last five digits of Plaintiff's credit card number on Plaintiff's transaction receipt, Defendant caused Plaintiff to suffer a heightened risk of identity theft, and exposed Plaintiff's private information to those of Defendant's employees who handled the receipt.

66.     As a result of Defendant's willful violations of the FCRA, Plaintiff and Class Members continue to be exposed to an elevated risk of identity theft. Defendant is liable to Plaintiff and Class Members pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorneys' fees, costs and expenses .

**WHEREFORE**, Plaintiff respectfully request that this Court enter judgment in favor of herself and the Class, and against Defendant for:

     a.   An Order granting certification of the Class;

     b.   Statutory damages;

     c.   Punitive damages;

     d.   Injunctive relief;

     e.   Attorneys' fees, litigation expenses, and costs of suit; and

     f.   Such other and further relief as the Court deems proper under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all counts so triable.

Dated: February 22, 2018               Respectfully submitted,

                                       **MORGAN & MORGAN**


                                       **/s/ ADIAN R. MILLER**
                                       Adian R. Miller, Esq.
                                       Ga. Bar No.:  794647
                                       **MORGAN & MORGAN, P.A.**
                                       191 Peachtree Street, N.E., Suite 4200
                                       Post Office Box 57007
                                       Atlanta, Georgia 30343-1007
                                       Tel:   (404) 496-7332
                                       Fax:   (404) 496-7428
                                       E-mail:  ARMiller@forthepeople.com
                                       *Attorneys for Plaintiff*


                                       **MORGAN & MORGAN**
                                       **COMPLEX LITIGATION GROUP**
                                       John A. Yanchunis (Florida Bar No.
                                       324681)*
                                       Rachel Soffin (Georgia Bar No. 255074)
                                       Jonathan B. Cohen (Florida Bar No.
                                       0027620)*
                                       201 N. Franklin St., 7th Floor
                                       Tampa, FL 33602
                                       Telephone: (813) 275-5272
                                       Facsimile: (813) 222-2434
                                       rsoffin@forthepeople.com
                                       jyanchunis@forthepeople.com
                                       rsoffin@forthepeople.com
                                       jcohen@forthepeople.com

                                       *Attorneys for Plaintiff*

                                       * pending *pro hac vice* application